## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WADEEDAH EL-AMIN, Individually and For Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| WELLPATH LLC f/k/a/ CORRECT CARE SOLUTIONS LLC | FLSA Collective Action<br>Rule 23 Class Action |

### ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.      Wadeedah El-Amin (El-Amin) brings this class and collective action to recover unpaid wages and other damages from WellPath LLC f/k/a Correct Care Solutions LLC (WellPath).

2.      El-Amin worked for WellPath as a Traveling Nurse that WellPath assigned to provide patient care services to various correctional facilities across Kentucky and Georgia.

3.      Like the Putative Class Members (as defined below), El-Amin regularly worked more than 40 hours in a workweek.

4.      But WellPath does not pay its Traveling Nurses, including El-Amin and the Putative Class Members, overtime wages at the proper premium rate.

5.      Instead, WellPath uniformly pays El-Amin and the Putative Class Members stipends (that include a baked-in bonus) when they work far away from their homes, which WellPath fails to include in calculating these employees' regular rates of pay for overtime purposes.

6.      WellPath's stipend pay scheme violates the Fair Labor Standards Act (FLSA) and the Kentucky Wage and Hour Act (KWHA) by failing to pay El-Amin and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

**JURISDICTION & VENUE**

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.      The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over WellPath because WellPath is a domestic corporation.

10.     Venue is proper because WellPath, a domestic corporation, resides in this District. 28 U.S.C. § 1391(b)(1).

**PARTIES**

11.     El-Amin worked for WellPath as a Traveling Nurse assigned to provide patient care services to various correctional facilities across Kentucky and Georgia from approximately January 2022 until March 2023.

12.     Throughout her employment, WellPath classified El-Amin as non-exempt and paid her on an hourly basis.

13.     Throughout her employment, WellPath paid El-Amin under its stipend pay scheme, paying her stipends (that included baked-in bonuses) when WellPath assigned her to work at facilities 50+ miles away from her home.

14.     But WellPath failed to include these stipends (or the baked-in bonuses) in calculating El-Amin's regular rate of pay for overtime purposes.

15.     El-Amin's written consent is attached as **Exhibit 1**.

16.     El-Amin brings this action on behalf of herself and other similarly situated hourly, non-exempt WellPath Traveling Nurses who were paid under WellPath's stipend pay scheme.

- 2 -

17. WellPath uniformly pays these employees stipends (that often include baked-in bonuses), which WellPath fails to include in calculating their regular rates of pay for overtime purposes.

18. Thus, WellPath uniformly deprives these employees of overtime compensation at the proper premium rate (based on *all* renumeration received) for all hours worked in excess of 40 hours in a workweek in violation of the FLSA and KWHA.

19. The FLSA Collective of similarly situated employees is defined as:

> **All hourly, non-exempt WellPath Traveling Nurses who received a stipend at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

20. El-Amin also seeks to represent such a class under the KWHA pursuant to FED. R. CIV. P. 23.

21. The Kentucky Class of similarly situated employees is defined as:

> **All hourly, non-exempt WellPath Traveling Nurses who received a stipend at any time during the past 5 years ("Kentucky Class Members" or "Kentucky Class").**

22. The FLSA Collective Members and the Kentucky Class Members are collectively referred to as the "Putative Class Members" or the "Putative Classes."

23. WellPath is a Delaware limited liability company that maintains its headquarters in Nashville, Tennessee.

24. WellPath may be served with process by serving its registered agent: **Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, Delaware 19810**.

## COVERAGE UNDER THE FLSA

25. At all relevant times, WellPath was and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26.     At all relevant times, WellPath was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

27.     At all relevant times, WellPath was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, medical tools, and personal protective equipment – that have been moved in or produced for commerce.

28.     In each of the past 3 years, WellPath has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

29.     At all relevant times, El-Amin and the Putative Class Members were WellPath's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

30.     At all relevant times, El-Amin and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

31.     WellPath uniformly paid El-Amin and the Putative Class Members stipend payments that included baked-in bonuses.

32.     But WellPath failed to include El-Amin's and the Putative Class Members' stipends (or the baked-in bonuses) in calculating these employees' regular rates of pay for overtime purposes.

33.     As a result, WellPath failed to pay El-Amin and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

34.     WellPath's stipend pay scheme, which deprives El-Amin and the Putative Class Members of overtime compensation at the proper premium rate, violates the FLSA. 29 U.S.C. § 207(a) & (e).

- 4 -

## FACTS

35.    WellPath bills itself as "the premier provider of localized, high-quality, compassionate care to vulnerable patients in challenging clinical environments."[1]

36.    To complete its business objectives, WellPath hires Traveling Nurses, including El-Amin and the Putative Class Members, to provide "medical, mental, and behavioral healthcare services to … patients located in inpatient and residential treatment facilities, civil commitment center, and local, state and federal correctional facilities"[2] across the county, including in Kentucky.

37.    WellPath uniformly classifies its Traveling Nurses as non-exempt and pays them on an hourly basis.

38.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39.    For example, El-Amin worked for WellPath as a Traveling Nurse assigned to provide patient care services to various correctional facilities across Kentucky and Georgia (including Augusta State Medical Prison, Hays Correctional Facility, Lee Arrendale State Correctional Facility, Louisville Metro Correctional Facility, and Coastal State Correctional Facility) from approximately January 2022 until March 2023.

40.    As a Traveling Nurse, El-Amin's primary responsibilities include providing patient care to inmates housed in various correction facilities, such as monitoring patient's conditions, checking vitals, assisting patients with medications, charting patients' treatments, and generally assisting doctors and other patient care staff.

---

[1] https://wellpathcare.com/ (last visited May 24, 2023).
[2] https://wellpathcare.com/about/ (last visited May 24, 2023).

41.    Throughout her employment, WellPath classified El-Amin as non-exempt and paid her on an hourly basis.

42.    Throughout her employment, WellPath paid El-Amin stipends when WellPath assigned her to work at facilities that were 50+ miles away from her home.

43.    Specifically, WellPath paid El-Amin a weekly stipend of $955, which included a $300 baked-in bonus:



44.    But WellPath failed to include these stipends (or the baked-in bonuses) in calculating El-Amin's regular rate of pay for overtime purposes.

45.    WellPath requires El-Amin and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

46.    At the end of each pay period, El-Amin and the Putative Class Members received wages from WellPath that were determined by common systems and methods that WellPath selected and controlled.

47.    WellPath requires its hourly, non-exempt Traveling Nurses, including El-Amin and the Putative Class Members, to record their hours worked using WellPath's timeclock system.

48. Given the nature of WellPath's Traveling Nurses' work, WellPath uniformly pays El-Amin and the Putative Class Members stipends when it assigns them to work at facilities far away from their homes.

49. El-Amin's and the Putative Class Members' stipends often included baked-in bonuses.

50. But WellPath fails to include these stipends (or the baked-in bonuses) in calculating El-Amin's and the Putative Class Members' regular rates of pay for overtime purposes.

51. WellPath's stipend pay scheme violates the FLSA and KWHA by failing to pay El-Amin and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

52. El-Amin worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

53. For example, during the workweek ending on December 24, 2022, El-Amin worked 82.08 hours:

54. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

55. Indeed, El-Amin and the Putative Class Members typically work 12-hour shifts for up to 7 days a week.

56.    As a result, El-Amin and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

57.    When El-Amin and the Putative Class Members worked more than 40 hours in a workweek, WellPath did not pay them overtime wages at 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked because WellPath failed to include these employees' stipends (or any baked-in bonuses) in calculating their regular rates of pay for overtime purposes.

58.    WellPath controls and dictates El-Amin's and the Putative Class Members' rates and methods of pay.

59.    WellPath maintains control, oversight, and direction over El-Amin and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), timekeeping, performance standards, and other employment policies.

60.    WellPath maintains control, oversight, and direction of El-Amin and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

61.    Indeed, WellPath dictates the hiring standards and all other employment policies applicable to its Traveling Nurses, including El-Amin and the Putative Class Members work.

62.    WellPath has the authority to hire, fire, and discipline its Traveling Nurses, including El-Amin and the Putative Class Members.

63.    WellPath controls El-Amin's and the Putative Class Members' schedules and assignments.

64.    WellPath controls El-Amin's and the Putative Class Members' work.

65.    WellPath requires El-Amin and the Putative Class Members to follow WellPath's policies, procedures, and specifications.

66.     El-Amin's and the Putative Class Members' work must strictly adhere to the quality standards put in place by WellPath.

67.     WellPath prohibits El-Amin and the Putative Class Members from varying their job duties outside WellPath's guidelines and expectations and requires El-Amin and the Putative Class Members to follow WellPath's policies, procedures, and directives.

68.     Without the job El-Amin and the Putative Class Members perform, WellPath would not be able to complete its business objectives of providing Traveling Nurses to work in healthcare facilities across the country, including in Kentucky.

69.     El-Amin and the Putative Class Members rely on WellPath for work and compensation.

70.     WellPath sets El-Amin's and the Putative Class Members' work schedule, which necessarily prohibits them from working other jobs while working for WellPath.

71.     WellPath maintains employment records for the employees working at its various healthcare facilities, including El-Amin and the Putative Class Members.

72.     In sum, WellPath's Traveling Nurses, including El-Amin and the Putative Class Members, are WellPath's employees.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

73.     El-Amin realleges and incorporates all other paragraphs by reference.

74.     El-Amin brings her claims as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

75.     The Putative Class Members were uniformly victimized by WellPath's stipend pay scheme, which is a willful violation of the FLSA and KWHA.

76.     Other Putative Class Members worked with El-Amin and indicated they were paid in the same manner, performed similar work, and were subject to WellPath's same illegal policies and practices.

77.     Based on her experiences with WellPath, El-Amin is aware WellPath's illegal stipend pay scheme was imposed on the Putative Class Members.

78.     The Putative Class Members are similarly situated in all relevant respects.

79.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

80.     Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

81.     Rather, the Putative Classes are held together by WellPath's uniform stipend pay scheme that systematically deprived El-Amin and the Putative Class Members of overtime pay at the proper premium rate based on all renumeration received for all hours worked in excess of 40 hours in a workweek.

82.     The Putative Class Members are similarly denied overtime compensation at the proper premium rate when they work more than 40 hours in a workweek.

83.     The back wages owed to El-Amin and the Putative Class Members will be calculated using the same records and using the same formula.

84.     El-Amin's experiences are therefore typical of the experiences of the Putative Class Members.

85.     El-Amin has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

86.     Like each Putative Class Member, El-Amin has an interest in obtaining the unpaid wages owed under federal and/or state law.

87. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

88. Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and WellPath will reap the unjust benefits of violating the FLSA and KWHA.

89. Further, even if some of the Putative Class Members could afford individual litigation against WellPath, it would be unduly burdensome to the judicial system.

90. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

91. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

92. Among the common questions of law and fact are:

    a. Whether WellPath's stipend pay scheme was uniformly applied to all its Traveling Nurses working in facilities across the country;

    b. Whether WellPath failed to include El-Amin's and the Putative Class Members' stipends (and/or baked-in bonuses) in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA and KWHA;

    c. Whether WellPath's stipend pay scheme deprived El-Amin and the Putative Class Members of overtime wages at the proper premium rate in violation of the FLSA and KWHA;

    d. Whether WellPath's violations of the FLSA and/or KWHA resulted from a continuing course of conduct;

      e.        Whether WellPath's decision not to pay El-Amin and the Putative Class Members overtime compensation at the proper premium rate was made in good faith; and

      f.        Whether WellPath's violations of the FLSA and/or KWHA were willful.

93.     El-Amin and the Putative Class Members sustained damages arising out of WellPath's illegal and uniform employment policies.

94.     El-Amin knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

95.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to WellPath's records, and there is no detraction from the common nucleus of liability facts.

96.     Therefore, the issue of damages does not preclude class or collective treatment.

97.     WellPath is liable under the FLSA and KWHA for failing to pay El-Amin and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

98.     Consistent with WellPath's illegal stipend pay scheme, El-Amin and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

99.     As part of its regular business practices, WellPath intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and KWHA with respect to El-Amin and the Putative Class Members.

100.    WellPath's illegal policies deprived El-Amin and the Putative Class Members of overtime compensation at the proper premium rate for all overtime hours worked, which they are owed under federal and/or state law.

101.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

103.    Those similarly situated employees are known to WellPath, are readily identifiable, and can be located through WellPath's records.

### WellPath's FLSA & KWHA Violations Were Willful or Done in Reckless Disregard for the FLSA & KWHA

104.    El-Amin realleges and incorporates all other paragraphs by reference.

105.    WellPath knew the Traveling Nurses it assigns to work at healthcare facilities across the country, including El-Amin and the Putative Class Members, are its employees.

106.    WellPath knew El-Amin and the Putative Class Members were its hourly employees.

107.    WellPath knew El-Amin and the Putative Class Members are non-exempt employees entitled to overtime because WellPath uniformly classifies and pays them as such.

108.    WellPath knew it was subject to the FLSA and KWHA, including their respective overtime provisions.

109.    WellPath knew the FLSA and KWHA require it to pay employees, including El-Amin and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

110.    WellPath knew it paid El-Amin and the Putative Class Members stipends when it assigned these employees to work at facilities far away from their homes.

111.    WellPath knew El-Amin's and the Putative Class Members' stipends often included baked-in bonuses.

112.    WellPath knew it was required to include El-Amin's and the Putative Class Members' stipends (including any baked-in bonuses) in calculating these employees' regular rates of pay for overtime purposes.

113.    WellPath knew it excluded El-Amin's and the Putative Class Members' stipends (as well as any baked-in bonuses) in calculating these employees' regular rates of pay for overtime purposes.

114.    WellPath knew El-Amin and the Putative Class Members worked more than 40 hours in a workweek because WellPath requires these employees to record their hours worked using its timeclock system.

115.    Thus, WellPath knew, or should have known, it failed to pay El-Amin and the Putative Class Members overtime wages at rates less than 1.5 times their regular rates of pay – based on all renumeration received – when these employees worked more than 40 hours in a workweek in violation of the FLSA and KWHA.

116.    Nonetheless, WellPath failed to pay El-Amin and the Putative Class Members overtime compensation at the proper premium rate.

117.    WellPath knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived El-Amin and the Putative Class Members of wages, including overtime compensation at the proper premium rate, for hours worked, including hours worked in excess of 40 hours in a workweek, in violation of the FLSA and KWHA.

118.    WellPath's failure to include El-Amin's and the Putative Class Members' stipends in calculating their regular rates of pay for overtime purposes was neither reasonable, nor was the

decision not to include all renumeration these employees received in calculating their regular rates of pay for overtime purposes made in good faith.

119.    WellPath's failure to pay El-Amin and the Putative Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME UNDER THE FLSA**
**(FLSA COLLECTIVE)**

120.    El-Amin realleges and incorporates all other paragraphs by reference.

121.    El-Amin brings her FLSA claim as a collective action on behalf of herself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

122.    WellPath violated, and is violating, the FLSA by failing to pay El-Amin and the FLSA Collective Members overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during mandatory pre-shift security screenings.

123.    Throughout the relevant period, WellPath paid El-Amin and the FLSA Collective Members stipends (that often included baked-in bonuses), which WellPath failed to include in calculating these employees' regular rates of pay for overtime purposes.

124.    El-Amin and the FLSA Collective Members have been harmed as a direct and proximate result of WellPath's unlawful conduct because they have been deprived of wages owed for work that they performed and from which WellPath derived a direct and substantial benefit.

125.    WellPath's failure to pay El-Amin and the FLSA Collective Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

126.    WellPath knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay El-Amin and the FLSA Collective Members overtime compensation at the proper premium rate for all overtime hours worked.

127.    Accordingly, El-Amin and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

<u>COUNT II</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA**
**(KENTUCKY CLASS)**

128.    El-Amin realleges and incorporates all other paragraphs by reference.

129.    El-Amin brings her overtime claim under the KWHA as a class action on behalf of herself and the Kentucky Class Members pursuant to FED. R. CIV. P. 23.

130.    The conduct alleged violates the KWHA, KRS § 337.285, *et seq.*

131.    At all relevant times, WellPath was an "employer" within the meaning of, and subject to the requirements of, the KWHA. *See* KRS § 337.010(1)(d).

132.    At all relevant times, WellPath employed El-Amin and the Kentucky Class Members as "employees" within the meaning of the KWHA. *See* KRS § 337.010(1)(e).

133.    Section 337.285 of the KWHA requires employers, like WellPath, to pay employees, including El-Amin and the Kentucky Class Members, overtime wages at a rate not less than 1.5 times their regular rate of pay for all hours worked in excess of 40 hours in any one workweek. KRS § 337.285(1).

134.    El-Amin and the Kentucky Class Members are entitled to overtime pay under the KWHA.

135.    WellPath violated, and is violating, the KWHA by failing to pay El-Amin and the Kentucky Class Members overtime compensation at the proper premium rate for all overtime hours worked. *See* KRS § 337.285(1).

136.    Specifically, WellPath's stipend pay scheme violates the KWHA because it deprives El-Amin and the Kentucky Class Members of overtime pay at the proper premium rate – based on all renumeration received – for all hours worked in excess of 40 hours in a workweek. *See* KRS § 337.285(1).

137.    WellPath's failure to pay El-Amin and the Kentucky Class Members overtime compensation at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

138.    WellPath knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay El-Amin and the Kentucky Class Members overtime compensation at the proper premium rate for all overtime hours worked.

139.    Accordingly, El-Amin and the Kentucky Class Members are entitled to recover their unpaid overtime wages under the KWHA in an amount equal to 1.5 times their regular rates of pay less any amounts actually paid to these employees, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* KRS § 337.385(1).

#### JURY DEMAND

140.    El-Amin demands a trial by jury.

#### RELIEF SOUGHT

WHEREFORE, El-Amin, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA

Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating the Kentucky Class as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing El-Amin and her counsel to represent the interests of the FLSA Collective and Kentucky Class;

d.    An Order pursuant to Section 16(b) of the FLSA finding WellPath liable for unpaid overtime wages due to El-Amin and the FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

e.    An Order finding WellPath liable to El-Amin and the Kentucky Class Members for unpaid overtime wages owed under the KWHA, as well as for liquidated damages in an amount equal to their unpaid compensation;

f.    Judgment awarding El-Amin and the Putative Class Members all unpaid compensation and other damages available under the FLSA and KWHA;

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: May 24, 2023.

Respectfully submitted,

**FARNAN LLP**

By: */s/ Michael J. Farnan*
Sue L. Robinson (Bar No. 100658)
Brain E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, Delaware 19801
302-777-0300 – Telephone
302-777-0301 – Facsimile
srobinson@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**